Citation Nr: 1607911 
Decision Date: 02/29/16 Archive Date: 03/04/16

DOCKET NO. 09-06 598 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Montgomery, Alabama


THE ISSUES

1. Entitlement to a disability rating in excess of 50 percent for posttraumatic stress disorder (PTSD). 
 
2. Entitlement to a total disability rating based on individual unemployability (TDIU).


REPRESENTATION

Appellant represented by: The American Legion


WITNESS AT HEARING ON APPEAL

Appellant



ATTORNEY FOR THE BOARD

T. Stephen Eckerman, Counsel


INTRODUCTION

The Veteran served on active duty from May 1990 to November 1992.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an April 2008 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in in St. Petersburg, Florida. The agency of original jurisdiction is currently the RO in Montgomery, Alabama. In January 2011, and November 2014, the Board remanded the claims for additional development. In August 2010, the Veteran was afforded a hearing before the undersigned. A transcript of the hearing is of record.


FINDINGS OF FACT

1. For the period prior to February 12, 2011, the Veteran's PTSD did not result in more than occupational and social impairment with reduced reliability and productivity. 

2. For the period from February 12, 2011 through February 2, 2015, the Veteran's PTSD resulted in occupational and social impairment, with deficiencies in most areas, but did not result in total occupational and social impairment due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. 

3. For the period after February 2, 2015, the Veteran's PTSD did not result in more than occupational and social impairment with reduced reliability and productivity. 

4. The Veteran's PTSD rendered him unable to secure and follow a substantially gainful occupation for the period beginning on February 12, 2011 and ending on February 2, 2015. 

5. The Veteran's service-connected disabilities did not render him unable to secure and follow a substantially gainful occupation for the period prior to February 12, 2011 or for the period after February 2, 2015. 


CONCLUSIONS OF LAW

1. The criteria for a 70 percent disability rating, but no higher, have been met for PTSD for the period from February 12, 2011 through February 2, 2015. 38 U.S.C.A. §§ 5107, 1155 (West 2014); 38 C.F.R. §§ 3.102, 4.1, 42, 4.3, 4.7, 4.10, 4.21, 4.130 Diagnostic Code 9411 (2015). 

2. The criteria for a disability rating higher than 50 percent for PTSD have not been met for the period prior to February 12, 2011 or for the period after February 2, 2015. 38 U.S.C.A. §§ 5107, 1155 (West 2014); 38 C.F.R. §§ 3.102, 4.1, 42, 4.3, 4.7, 4.10, 4.21, 4.130 Diagnostic Code 9411 (2015). 

3. The criteria for a TDIU have all been met for the period from February 12, 2011 through February 2, 2015. 38 U.S.C.A. §§ 5107, 1155 (West 2014); 38 C.F.R. §§ 3.102, 4.3, 4.16(a) (2015). 

4. The criteria for a TDIU have not all been met for the period prior to February 12, 2011 or for the period after February 2, 2015. 38 U.S.C.A. §§ 5107, 1155 (West 2014); 38 C.F.R. §§ 3.102, 4.3, 4.16(a),(b) (2015). 



REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Disability Ratings

The Veteran contends that a higher rating is warranted for disability due to PTSD, including a total rating based on his PTSD rendering him unable to secure and follow a substantially gainful occupation. 

Service connection for PTSD was established in a January 2002 rating decision and an initial 30 percent rating was assigned. That rating remained in place until the RO granted a rating of 50 percent in a March 2004 rating decision, assigning an effective date in October 2003. In August 2007, the RO received his current claim of entitlement to a higher rating for PTSD and a TDIU. It is noted that the RO has granted a temporary total evaluation for the Veteran's PTSD for the periods from January 15, 2008 to April 30, 2008, with a 50 percent rating thereafter, and from March 17, 2014 to May 31, 2014. See 38 C.F.R § 4.30 (2015). 

In addition to PTSD, service connection is in place for two other disabilities - fracture, third left toe and an appendectomy scar both rated zero percent. 


 Law and Regulations

Disability ratings are determined by applying the criteria set forth in the VA's Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes (DCs). 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. The basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10. 

In determining the severity of a disability, the Board is required to consider the potential application of various other provisions of the regulations governing VA benefits, whether or not they were raised by the Veteran, as well as the entire history of the Veteran's disability. 38 C.F.R. §§ 4.1, 4.2; Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991).

If the disability more closely approximates the criteria for the higher of two ratings, the higher rating will be assigned; otherwise, the lower rating is assigned. 38 C.F.R. § 4.7. It is not expected that all cases will show all the findings specified; however, findings sufficiently characteristic to identify the disease and the disability therefrom and coordination of rating with impairment of function will be expected in all instances. 38 C.F.R. § 4.21. 

In deciding this appeal, the Board has considered whether separate ratings for different periods of time, based on the facts found, are warranted, a practice of assigning ratings referred to as "staging the ratings." See Hart v. Mansfield, 21 Vet. App. 505 (2008). 

PTSD, assigned a DC of 9411, is rated by applying the criteria found under the General Rating Formula for Mental Disorders at 38 C.F.R. § 4.130. 

Under 38 C.F.R. § 4.130, DC 9411, a 50 percent rating is warranted where the disorder is manifested by occupational and social impairment with reduced reliability and productivity due to such symptoms as flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks (more than once a week); difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. Id. 

Under 38 C.F.R. § 4.130, DC 9411, a 70 percent rating is warranted where there is occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking or mood, due to such symptoms as: Suicidal ideations; obsessional rituals that interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); inability to establish and maintain effective relationships. 

Under 38 C.F.R. § 4.130, DC 9411 a 100 percent rating is warranted where there is total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. 

That portion of VA's Schedule for Rating Disabilities ("the Schedule") that addresses service-connected psychiatric disabilities was based on the American Psychiatric Association 's Diagnostic and Statistical Manual of Mental Disorders (DSM) IV prior to a change effective August 4, 2014. 38 C.F.R. § 4.130 (2014). The regulation has been changed to reflect the current DSM, the DSM V. The DSM-IV contained a Global Assessment of Functioning (GAF) scale, with scores ranging between zero and 100 percent, representing the psychological, social, and occupational functioning of an individual on a hypothetical continuum of mental health - illness. Higher scores correspond to better functioning of the individual. 

GAF scores ranging from 41 to 50 reflect serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job). GAF scores ranging from 51 to 60 reflect more moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co- workers). GAF scores ranging between 61 to 70 reflect some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning "pretty well," and has some meaningful interpersonal relationships. See Quick Reference to the Diagnostic Criteria from DSM-IV at 47 (American Psychiatric Association 1994) ("QRDC DSM-IV"). 

The symptoms listed at 38 C.F.R. § 4.130 are not an exclusive or exhaustive list of symptomatology which may be considered for a higher rating claim. Mauerhan v. Principi, 16 Vet. App. 436 (2002). The U.S. Court of Appeals for the Federal Circuit (Federal Circuit) has emphasized that the list of symptoms under a given rating is a nonexhaustive list, as indicated by the words "such as" that precede each list of symptoms. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 115 (Fed. Cir. 2013). In Vazquez-Claudio, the Federal Circuit held that a veteran may only qualify for a given disability rating under § 4.130 by demonstrating the particular symptoms associated with that percentage or others of similar severity, frequency, and duration. Id. at 118. Other language in the decision indicates that the phrase "others of similar severity, frequency, and duration," can be thought of as symptoms of like kind to those listed in the regulation for a given disability rating. Id. at 116. 

Also for consideration is whether referral is warranted for a rating outside of the schedule. To accord justice in an exceptional case where the scheduler standards are found to be inadequate, the field station is authorized to refer the case to the Chief Benefits Director or the Director, Compensation and Pension Service for assignment of an extraschedular evaluation commensurate with the average earning capacity impairment. 38 C.F.R. § 3.321(b)(1) (2015).

The criterion for such an award is a finding that the case presents an exceptional or unusual disability picture with related factors as marked interference with employment or frequent periods of hospitalization as to render impractical application of regular schedular standards. 38 C.F.R. § 3.321(b). The Board is precluded by regulation from assigning an extraschedular rating under 38 C.F.R. § 3.321(b)(1) in the first instance; however, the Board is not precluded from raising this question, and in fact is obligated to liberally read all documents and oral testimony of record and identify all potential theories of entitlement to a benefit under the law and regulations. Floyd v. Brown, 9 Vet. App. 88 (1996). 

Extraschedular consideration involves a three step analysis. Thun v. Peake, 22 Vet. App. 111 (2008). First, the Board or the RO must determine whether the schedular rating criteria reasonably describe the Veteran's disability level and symptomatology. Id. at 115. If the schedular rating criteria do reasonably describe the Veteran's disability level and symptomatology, the assigned schedular evaluation is adequate, referral for extraschedular consideration is not required, and the analysis stops. Id.

If the RO or the Board finds that the schedular evaluation does not contemplate the Veteran's level of disability and symptomatology, then either the RO or the Board must determine whether the Veteran's exceptional disability picture includes other related factors such as marked interference with employment and frequent periods of hospitalization. Id. at 116. If this is the case, then the RO or the Board must refer the matter to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for the third step of the analysis, determining whether justice requires assignment of an extraschedular rating. Id.

Also for consideration, is whether the collective effect of a veteran's service connected disabilities makes the disability picture and unusual or exceptional one. See Johnson v. McDonald, 762 F.3d 1362, 1365-66 (Fed. Cir. 2014).

Total disability ratings for compensation may be assigned, where the schedular rating is less than 100 percent, when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of one or more service-connected disabilities without regard to advancing age. 38 C.F.R. §§ 3.341(a), 4.16(a). A "schedular TDIU" can be assigned if the disabled person is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities, provided that, if there is only one such disability, the disability shall be ratable at 60 percent or more, and that, if there are two or more service-connected disabilities, at least one must be rated at 40 percent or more and the combined rating must be 70 percent or more. 38 C.F.R. § 4.16(a). However, if the percentage ratings of 38 C.F.R. § 4.16(a) are not met but the Veteran is unable to secure and follow a substantially gainful occupation by reason of service-connected disability or disabilities, an "extraschedular TDIU" can be assigned. C.F.R. § 4.16(b). In such facts are present, the case should be submitted to the Director, Compensation Service for extraschedular TDIU consideration. C.F.R. § 4.16(b). 

In determining entitlement to a TDIU, the central inquiry is whether the Veteran's service-connected disabilities alone are of sufficient severity to cause unemployability, without regard to advancing age or disabilities for which service connection has not been established. See Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993); 38 C.F.R. §§ 3.341(a), 4.16(a). VA's General Counsel has concluded that the controlling VA regulations generally provide that Veterans who, in light of their individual circumstances, but without regard to age, are unable to secure and follow a substantially gainful occupation as the result of service-connected disability shall be rated totally disabled, without regard to whether an average person would be rendered unemployable by the circumstances. VAOPGCPREC 75-91. Thus, the criteria include a subjective standard. VA's General Counsel further observed that "unemployability" is synonymous with inability to secure and follow a substantially gainful occupation. Id. 

The effective date an award based on a claim for an increase will be the date of receipt of the claim or the date entitlement arose based on the facts found, whichever is the later. 38 U.S.C.A. § 5110(a); 38 C.F.R. § 3.400. For claims for increase (as opposed to disagreements with the initial rating assigned), the award of a higher rating will be the earliest date as of which it is factually ascertainable that an increase in disability had occurred if the claim is received within one year from such date otherwise, date of receipt of claim. 38 U.S.C.A. § 5110(b) ; 38 C.F.R. § 3.400(o). Claims of entitlement to TDIU, raised after the decision assigning the initial rating is final, are claims for an increase. 


 Facts

The Board has considered the entire history of the Veteran's disability, including January 2000 Social Security Administration (SSA) determination that he is disabled, with a primary diagnosis of affective mood disorders, and a secondary diagnosis of essential hypertension. Also noted is that a March 2005 VA examination report contains a diagnosis of chronic, moderate PTSD, with a global assessment of functioning (GAF) score of 60, and a notation of moderate social and occupational impairment due to PTSD. 

Records from VA's vocational rehabilitation service note that he has not worked since June 1999, following a back injury incurred in a motor vehicle accident (MVA) and subsequent back surgery, with service-connected disability that contributed to his impairment of employability. The Veteran took college classes between 2004 and 2006. It was concluded that it is not reasonably feasible for him to achieve a vocational goal, and that he was not able to work and sustain a gainful employment in a competitive job market due to his disabilities. See August 2007 independent living assessment, and report, from L.T., MCP, CLCP, CRC. In July 2008, independent living was achieved. 

VA treatment notes show that the Veteran received ongoing treatment for psychiatric symptoms. For example, October 2006 VA progress notes, document his reports of hearing voices and having nightmares at night. He denied mood swings and reported that his temper was under better control. He denied suicidal or homicidal ideation. July 2007 notes document that he was clean, cooperative, alert, oriented to person place and time, had normal rate and tone of speech, euthymic mood, no anxiety, affect congruent with mood, no suicidal or homicidal ideation, logical thought process, no evidence of psychotic thinking, no hallucinations, normal abstract thinking, no perceived deficit in memory, good judgment and good insight. 

An April 2008 VA discharge summary documents that he had a GAF score of 55, and that he denied hallucinations, delusions, or homicidal/suicidal ideation, and did not appear clinically depressed. 

February, June, and October 2009 treatment notes document that the Veteran was neatly groomed, cooperative, had normal rate, tone, and volume of speech, an appropriate affect, linear, goal directed thought process, no overt psychosis; he denied hallucinations, and had intact insight and judgment. 

The Veteran attended a VA psychosocial residential rehabilitation treatment program between January and April of 2008, and between March and May of 2014 (a temporary total rating is in effect for these time periods). There was no indication that the Veteran had been employed. It appears he had been married since 2000. He was afforded GAF scores of 44 and 70 (in January 2013) and 55 (in October 2011 and March 2012).

A VA compensation and pension (C&P) examination report, dated in October 2007, shows that the examiner indicated that the Veteran's claims file had been reviewed. The Veteran complained of symptoms that included recurrent and distressing memories and dreams of inservice events, acting or feeling as if the event were recurring, difficulties falling asleep and concentrating, and hypervigilance. The report notes the following: the Veteran has been receiving outpatient treatment for psychiatric symptoms since 2005, with a history of bipolar disorder, and PTSD. There is no history of hospitalization for a mental disorder. He is receiving anti-manic and anti-depressant medications (Depakote and Celexa). There are no side effects from his medications. The effectiveness of his therapy has been fair. 

The examiner stated that the Veteran is married and has a good relationship with his spouse. He denies social relationships, activities, and leisure. There is no history of suicide attempts, violence, or assaultiveness. His current psychosocial functional status is impaired. He has no issues with alcohol or substance abuse. On examination, he was clean and neatly groomed. Speech was slow. He was cooperative and friendly. Mood was depressed. He could do serial 7s, and spell a word forward and backwards. He was oriented to person, time, and place. Thought process was unremarkable. There were no delusions. For judgment, he understands the outcome of his behavior. For insight, he understands that he has a problem. There are no hallucinations, inappropriate behavior, obsessive or ritualistic behavior, panic attacks, or homicidal or suicidal thoughts. Impulse control is good. He was able to maintain physical hygiene. There is no problem with the activities of daily living. Remote and immediate memory are normal; recent memory is mildly impaired. There has been no period of remission since his last examination in 2005. He has frequent, chronic, moderate PTSD symptoms. The Axis I diagnosis was chronic, moderate PTSD. The Axis V diagnosis was a GAF score of 51. The examiner stated that the Veteran has moderate social and occupational impairment due to PTSD, moderate impairment in physical and sedentary employment due to PTSD, moderate impairment in functional status and quality of life due to PTSD. There is a good prognosis for improvement in his condition with treatment. His symptoms are productive of reduced reliability and productivity, but not total occupational and social impairment due to deficiencies in judgement, thinking, family relations, work, mood, or school. There is no total occupational and social impairment due to PTSD signs and symptoms. The examiner stated that the Veteran's bipolar disorder was not assessed as he is not service-connected for that disorder.
 
VA also afforded the Veteran a C&P general medical examination in October 2007. The examiner ultimately determined that his appendectomy scar and fracture toe were well healed, free of symptoms, and did not affect his employability. 

VA afforded the Veteran a C&P PTSD examination again on February 12, 2011. The examiner indicated that the Veteran's claims file had been reviewed. The DBQ notes the following: The Veteran was noted to have received ongoing outpatient treatment for his mental disorder, to include anti-psychotic, anti-manic, and anti-depressant medication (Aripiprazole, Depakote, Quetiopine, Trazodone). There is no history of hospitalization for psychiatric symptoms. The effectiveness of his therapy has been good, although his subjective perception was that it had not worked very well. He has been married for 10 years. 

The Veteran reported moderate, daily symptoms that included recurrent and distressing memories and dreams of inservice events, efforts to avoid stimuli associated with his trauma, sleep symptoms, irritability, and an exaggerated startle response. For activities and leisure pursuits, he played on his computer. He has tried to hurt himself three times since 2004, by cutting his leg, and wrists, and attempting to hang himself. He was assaultive towards his wife the previous month, and twice in the remote past. The examiner stated that the Veteran lives in a rural area and is non-functional for the most part, with occasional domestic violence. There are no current issues with alcohol or substance abuse. He complained of symptoms that included sleep impairment (three to four hours of sleep per night), and feeling irritable the next day. 

On examination, he was disheveled, and hypoactive. Speech was unremarkable. He was cooperative, with blunted affect and dysphoric mood. He was not able to do serial 7s, or spell a word forward or backward. He was oriented to person, time, and place. For thought process, he had a paucity of ideas. For thought content, he had a poverty of thought. There are no delusions, hallucinations, inappropriate behavior, obsessive or ritualistic behavior, or homicidal or suicidal thoughts. Impulse control was good. For judgment, he understood the outcome of his behavior. For insight, he understood that he has a problem. There is no problem with the activities of daily living. Immediate memory was normal. Remote and recent memory is mildly impaired. The Veteran reported that he had been unemployed for over 20 years due to a wreck, with a history of driving a truck. The Axis I diagnosis was chronic, moderate PTSD. The Axis V diagnosis was a GAF score of 50. The examiner noted that he cannot work due to his attitude, his PTSD drugs, some family violence, and no friends. His prognosis was guarded. The examiner concluded that it was as likely as not that he was unable to secure and maintain substantially gainful employment, due to his age and time in his life, and due to his ongoing PTSD symptoms and social dysfunction. 

In November 2014, the Board remanded the case for another examination and opinion. This was in part because the 2011 examiner had included the Veteran's age as a reason for why he was unemployable. This left the Board with insufficient medical evidence to determine whether a TDIU was warranted. 

Pursuant to that Remand, another examination was conducted on February 3, 2015. The report of that examination, a VA PTSD disability benefits questionnaire (DBQ), shows that the examiner indicated that the Veteran's claims file had been reviewed. The DBQ notes the following: the Veteran was still married to a supportive spouse, and he attends church regularly. He remained unemployed. He was receiving ongoing medication (Mirazapine, Divalproex, Clonazepam). In August 2014, his mood was noted to be stable, with overall improvement, and less problematic sleep. In October 2014, the Veteran reported an increase in irritability due to visiting his father in October 2014, with his sleep and appetite were reported as fair. In December 2014, the Veteran's spouse has reported that she had seen an improvement in the Veteran's anger and irritability. The Veteran's current symptoms included anxiety, chronic sleep impairment, mild memory loss, and difficulty in establishing and maintaining effective work and social relationships. On examination, the Veteran was fully oriented. His appearance was clean. He was alert. Speech had a normal rate and tone. He denied homicidal or suicidal thought, plan, or intent. Affect was bright. Thought processes and thought content were within normal limits. Mood was pleasant. Motor activity was within normal limits. The Axis I diagnoses were PTSD, and ETOH dependence in remission. The Axis V diagnosis was a GAF score of 55. The examiner concluded that the Veteran's symptoms were productive of occupational and social impairment with reduced reliability and productivity. The examiner further stated that there was no impairment due to ETOH dependence, which was in full remission, and that the Veteran's symptoms had resulted in moderate social and occupational impairment due to PTSD. 


 Analysis

Staged schedular ratings, including TDIU, are appropriate in this case. For the period up to the February 2011 examination, a rating in excess of 50 percent is not warranted and the evidence shows that the Veteran's service-connected disabilities did not render him unable to secure a substantially gainful occupation. Hence, remand for referral for extraschedular TDIU is not warranted for the period prior to February 12, 2011. 

The Veteran's symptoms of PTSD are not shown to be sufficiently severe to have resulted in occupational and social impairment with deficiencies in most areas. The symptoms of his PTSD more closely resemble the criteria for not more than a 50 percent rating. The examination report from 2007 and the treatment notes prior to February 2011 show that he did not have deficiencies in most areas or that his symptoms were those found in the criteria for the 70 percent or 100 percent ratings, or of similar kind. Although he reported hearing voices at night, the evidence does not show that he had persistent hallucinations or that his level of impairment during the period up to the 2011 examination was one of deficiencies in most areas. For this reason, the Board concludes that the preponderance of evidence is against a finding that his PTSD approximated the criteria for a rating higher than 50 percent. 

Additionally, the 2007 examination shows that his PTSD resulted in moderate impairment in functional status. This is evidence against a finding that his PTSD rendered him unable to secure and follow a substantially gainful occupation. The general medical examination shows that his appendectomy scar and fractured toe do not render him unemployable. 

The Board finds the examination reports and the treatment records to be most probative evidence of record as to whether his PTSD met the criteria for a rating higher than 50 percent for this time period or rendered him unemployable during this time period. It is noted that there is no contention and the record shows that his appendectomy scar and fractured toe do not have any effect on his employability. 

The February 2011 examination report, however, does tend to show that the Veteran's PTSD approximated the criteria for a 70 percent rating, but no higher. There is evidence of assaultive behavior and he was disheveled at the examination. This corresponds to neglect of personal appearance and to impaired impulse control. The report shows that he had deficiencies in family relations, thinking, mood, and work. The evidence from that period however does not show that he had total occupational and social impairment. Although the examiner commented that he was isolated and non-functional for the most part, it was also indicated that he remained married and played on the computer. More importantly, his symptoms were not those listed for the 100 percent rating and were not of like kind to those listed symptoms. The reports of cutting himself and of assaulting his spouse were not of such frequency as to support a finding that he was a persistent danger of hurting himself or others; there was no gross impairment in thought processes or communication or persistent delusions or hallucinations. His memory was not impaired to the degree described for the 100 percent rating and although he was disheveled at the examination, the evidence does not show that he had the inability to perform minimal personal hygiene. For these reasons, the Board concludes that the Veteran's PTSD did not approximate the criteria for a 100 percent rating under 38 C.F.R. § 4.130 during the period beginning in February 2011. 

The evidence of record is such that it is not ascertainable from the facts found that his PTSD approximated the criteria for a rating higher than 50 percent prior to the February 12, 2011 date of the examination. 

In February 2015 examination findings show that the Veteran did not have deficiencies in most areas due to his PTSD. The findings also show that he did not have symptoms listed in the criteria for a 70 percent or 100 percent rating or symptoms similar in kind to those listed symptoms. He no longer had impaired impulse control or neglect of personal appearance. The only symptoms found on examination - anxiety, chronic sleep impairment, mild memory loss, and difficulty in establishing and maintaining effective work and social relationships - are consistent with the criteria for the 50 percent rating and, indeed, consistent with the examiner's finding that his level of impairment was occupational and social impairment with reduced reliability and productivity. The findings show that his PTSD did not approximate the criteria for a rating higher than 50 percent. The date of the examination, February 3, 2015, is the earliest date, following February 12, 2011, that the facts show that the rating criteria for higher than a 50 percent rating for PTSD were not approximated. 

The examiner's discussion regarding the Veteran's employability is significant for two reasons. First, it is sufficient evidence for the Board to determine whether a TDIU is warranted for the period of time relevant to the February 2015 examination. Second, it solves the evidence insufficiency resulting from the 2011 examination in which that examiner included factors outside of the Veteran's service-connected disabilities, significantly his age, in finding him unable to secure and follow a substantially gainful occupation. 

As to that second significant reason, the February 2015 explanation for the determination that the Veteran's psychiatric symptoms did not render him unemployable tends to show that prior to the more recent period of time, his PTSD symptoms, standing alone, did render him unemployable. The examiner's rationale was that his more recent treatment showed improvement in his psychiatric symptoms. There is a strong inference that prior to that recent improvement, his PTSD symptoms were sufficiently severe so as to render him unable to secure and follow a substantially gainful occupation, regardless of his age or other factors. For this reason, the Board finds that the February 2011 examination report together with the February 2015 examination report provides sufficient evidence that for the period from February 12, 2011 through February 2, 2015, a TDIU is warranted. 

The opinion that his PTSD symptoms do not render him unable to secure and follow a substantially gainful occupation at least as of the date of the February 3, 2015 examination, is supported by the functional impairment shown by the February 2015 examination and the examiner's opinion. Thus, the Board concludes that the criteria for a TDIU are met for the period beginning on February 12, 2011 and ending on the day prior to the February 3, 2015 examination; i.e. February 2, 2015. The facts found are not such that it can be ascertained that his PTSD rendered him unable to secure a substantially gainful occupation prior to February 12, 2011 examination and are not such that it can be determined that at a specific date prior to February 3, 2015 was when he was again not unable to secure and follow a substantially gainful occupation due to service-connected disability. Therefore, the Board finds that a TDIU is warranted for the period from February 12, 2011 through February 2, 2015, but for no other period of time on appeal 

The Board has not neglected to consider whether an extraschedular rating, under 38 C.F.R. § 3.321(b) is warranted for the Veteran's PTSD for any period on appeal. The criteria for rating PTSD include the symptoms that the Veteran has been found to have. Although the Veteran has not been found to have symptoms that are not listed in the schedular criteria, the Board has also been aware, in reviewing the evidence, that the list of symptoms is not exhaustive but includes symptoms of like kind to those listed. The evidence does not show that the Veteran has any symptoms of his PTSD that are not contemplated by the schedule. Nor is this a case where his level of disability is not contemplated by the schedule. That schedule includes levels of symptomatology more severe than what the Veteran has been shown to have, for example, the schedule provides a 100 percent rating for memory loss of such severity as loss of memory of names of close relatives or one's own name. Also noted is that neither the Veteran nor the record raises the question of whether his service-connected appendectomy scar or toe fracture has a collective effect together with his PTSD to warrant referral for an extaschedular rating. The evidence does not show such collective effect. For these reasons, the Board finds that the preponderance of evidence is against referring this case for extraschedular consideration under 38 C.F.R. § 3.321(b). 

In making all of the determinations in this case, the Board has considered the statements of the Veteran and those reported by his spouse. The Board finds that the most probative evidence is that found in the treatment records and the examination reports discussed. This is because those records and reports took into consideration the lay statements as well as a review of the relevant medical history and included the findings of medical professionals who have expertise in determining what symptoms are present and the severity of such symptoms. 

In summary, the Board concludes that a 70 percent schedular rating and a TDIU are warranted for the period from February 12, 2011 through February 2, 2015 and that the preponderance of the evidence is against granting a rating higher than 50 percent and against remanding for referral for consideration of an extraschedular consideration of a TDIU or consideration of an extraschedular rating under 38 C.F.R. § 3.321(b) for any other period on appeal. There is no reasonable doubt to resolve in this case. See 38 U.S.C.A. § 5107(b); 38 C.F.R. §§ 3.102, 4.3. 


Duties to Notify and Assist

VA has a duty to notify and assist claimants in substantiating claims for VA benefits. See eg. 38 U.S.C.A. §§ 5103, 5103A (West 2014) and 38 C.F.R. § 3.159 (2015). In the instant case, VA provided adequate notice in a letter sent to the Veteran in September 2007. 

VA has a duty to assist a claimant in the development of a claim. This duty includes assisting the claimant in the procurement relevant treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. 

The Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). Service and VA treatment records are associated with the claims file as are records associated with his claim for disability benefits from the Social Security Administration (SSA). VA provided an adequate examination in February 2015. To the extent that there were parts of an earlier examination that were inadequate, the February 2015 opinion provided the necessary medical evidence. 

In November 2014, the Board remanded these claims. The Board directed that the Veteran be sent a letter requesting that he identify all VA and non-VA private health care providers who have treated him for psychiatric symptoms after 2008. In January 2015, the Veteran was sent a letter that was in compliance with the Board's instructions. VA treatment records, dated through 2015, were subsequently obtained. The Board further directed that the Veteran be scheduled for a VA psychiatric examination, to include findings as to what PTSD symptoms are currently being manifested, the assignment of a GAF score, and an opinion as to whether it is at least as likely as not that the Veteran's psychiatric symptoms render the Veteran unable to secure and follow a substantially gainful occupation, given his level of education, prior work experience and training, but not due to any impact on account of his age or disabilities that are not service-connected, supporting such opinion with a complete rationale that references manifested symptomatology and limitations. The February 2015 examination was in compliance with the Board's Remand. There has been substantial compliance with the Board's Remand. See Dyment v. West, 13 Vet. App. 141, 146-147 (1999) (remand not required under 


(CONTINUED ON NEXT PAGE)

Stegall v. West, 11 Vet. App. 268 (1998) where Board's remand instructions were substantially complied with). 

There is no indication of additional existing evidence that is necessary for a fair adjudication of the claim that is the subject of this appeal. Hence, no further notice or assistance to the Veteran is required to fulfill VA's duty to assist. 


ORDER

A 70 percent disability rating, but no higher, is granted for PTSD, for the period from February 12, 2011 and through February 2, 2015, subject to the laws and regulations governing the payment of monetary benefits. 

A TDIU is granted for the period from February 12, 2011 through February 2, 2015, subject to the laws and regulations governing the payment of monetary benefits. 

Entitlement to a disability rating higher than 50 percent, for PTSD, is denied for the period prior to February 12, 2011 and for the period beginning on February 3, 2015. 

Entitlement to a TDIU is denied for the period prior to February 12, 2011 and for the period beginning on February 3, 2015. 



____________________________________________
JAMES G. REINHART
Acting Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs